

Private and Confidential

December 22, 2025

Botao Ma

Chief Executive Officer

Floor 3, Building 6, Wuxing Road, Lane 727

Pudong New Area, Shanghai, China, 201204

Dear Mr. Ma,

This letter agreement (this "Agreement") confirms the agreement between Zhibao Technology Inc. (including its present and future subsidiaries and affiliates, the "Company") and E.F. Hutton & Co. ("Placement Agent") as follows:

1. **Role**:  The Company hereby engages Placement Agent as its exclusive placement agent for, and only for the Company's proposed convertible note financing with certain investors. The precise terms of the Financing and the gross proceeds of such Financing will be negotiated by the Placement Agent and the Company with one or more investors.

2. **Fees**:   In connection with any closing of any Financing (the "Closing"), the Company shall pay Placement Agent a non-refundable cash fee equal up to 8% of its allocation of the gross proceeds raised thereby (the "Gross Proceeds") (the "Financing Fee"). For the avoidance of doubt, Placement Agent shall receive 100% of the Financing Fees from the Gross Proceeds at the time of the closing of a Financing, via flow of funds. In addition to the Financing Fees, the Company shall pay Placement Agent a non-refundable cash fee equal to 1% of the Gross Proceeds of any Financing as a non-accountable expense allowance (the "Non-Accountable Expense Fee"), payable at the Closing via flow of funds.

3. **Definitive Agreement**: To the extent applicable to the Financing, at or prior to the commencing of any pricing of any Financing, upon Placement Agent's request and subject to the Company's review and consent, the Company shall enter into a placement agreement, sales agreement or other similar agreement, respectively, with Placement Agent, based upon Placement Agent's customary form for the applicable Financing (the "Definitive Agreement"). Placement Agent shall have no obligation to commence, provide or arrange any part of any Financing until such time as the applicable Definitive Agreement is signed. In no event shall any roles, Financing Fees (including allocations) or Reimbursable Expenses (as defined below) payable to Placement Agent set forth therein be less than as set forth herein. However, if Placement Agent does not make such request, then this Agreement shall govern any such Financing.

1

December 22, 2025

4. **Expense Reimbursement**:   The Company shall reimburse Placement Agent for all reasonable and documented legal expenses incurred in connection herewith up to $60,000 (the "Reimbursable Expenses"), whether or not any Financing is consummated. If any Financing is consummated, then Placement Agent shall be entitled to deduct or be paid any such Reimbursable Expenses directly from the Gross Proceeds thereof. However, if any other Financing is not consummated, then the Company shall pay any such out-of-pocket expenses directly to Placement Agent and any such legal expenses directly to Placement Agent's legal counsel, in each case, promptly upon presentation of an invoice. Additionally, the Company will provide an expense advance (the "Advance") to Placement Agent of $20,000, due upon the execution of this Agreement. The Advance shall be applied towards the Reimbursable Expenses set forth herein and any portion of the Advance shall be returned to the Company to the extent not actually incurred.

5. **[Reserved]**

6. **Term & Tail**: Placement Agent's engagement hereunder shall continue until the earlier of (i) termination by either Placement Agent or by the Company upon at least 15-day prior written notice to the other party and (ii) January 31, 2026, if the $3 million financing under the Initial Tranche (as defined in the Term Sheet) has not been consummated by such date. However, Placement Agent will continue to be entitled to receive the full amount of any Financing Fee payable pursuant to Section 2 above (the "Tail Fee") if, prior to the expiration of twelve (12) months after any termination of Placement Agent's engagement hereunder, a Financing is consummated, in which the investor was initial introduced by Placement Agent and  Placement Agent actually participated in procuring or negotiating the Financing. Furthermore, Sections 4-18 shall survive any such termination of Placement Agent's engagement hereunder. During the term of the agreement hereunder the Company would not pursue any financing transaction which would be the same type as contemplated under the Term Sheet.

7. **Company's Representations & Warranties**:   In connection with any Financing (other than a securities offering that will be placed by Placement Agent pursuant to a placement agreement, sales agreement or other similar agreement, respectively, with Placement Agent, based upon Placement Agent's customary form for the applicable Financing), the Company represents, warrants and agrees as follows:

   (a)   Each Financing will be evidenced by one or more purchase, subscription or other similar agreements between the Company and each investor, in form and substance reasonably satisfactory to Placement Agent and the Company, containing customary representations, warranties, covenants, indemnification provisions and closing conditions (any such agreement, a "Purchase Agreement"), and the Company shall use commercially reasonable efforts to perform and comply with each of its covenants and other obligations set forth in any such Purchase Agreement.

December 22, 2025

(b)     The Company shall cause Placement Agent to be entitled to rely on (i) any opinions delivered to investors in connection with any Financing; and (ii) the representations and warranties of the Company and any investors contained in any Purchase Agreement, as if they were made directly to Placement Agent.

(c)     At each Closing, the Company will cause its outside counsel to address and deliver to the Company and Placement Agent a customary opinion or opinions, dated as of such dates, in form and substance reasonably satisfactory to Placement Agent; and the Company shall also furnish to Placement Agent and its counsel such customary additional certificates, opinions or other documents as they may reasonably request.

(d)     The Company shall cooperate with Placement Agent to cause each investor in any such Financing to execute an investor letter including, but not limited to, representations that such investor is an "accredited investor" or "qualified institutional buyer" within the meaning of the Securities Act of 1933, as amended (the "Securities Act") or such other representations required for a valid private placement.

(e)     The Company has neither taken nor permitted its directors, officers or employees to take and shall not take or permit its directors, officers or employees to take, any action that would cause the Financing to fail to qualify for an exemption from the registration requirements of the Securities Act and applicable state and foreign securities laws and regulations with respect to any Financing.

(f)     The Company shall not issue any securities in connection with any Financing pursuant to Rule 506 of Regulation D promulgated under the Securities Act without (x) providing prior written notice to Placement Agent that it intends to do so (which written notice must be provided at least five business days prior to commencement of marketing of any Financing) and (y) receiving the Placement Agent's written consent to do so. For the avoidance of doubt, this Section 7(f) shall not apply to the Company's financing or transactions other than the Financing as contemplated under the Term Sheet; and

(g)     None of the Company, any of its predecessors, any affiliated issuer, any director, executive officer, or any other officer of the Company expected to participate in any offering of securities pursuant to Rule 506 under Regulation D of the Securities Act ("Covered Securities"), any beneficial owner of 20% or more of the Company's outstanding voting equity securities, calculated on the basis of voting power, nor any promoter (as that term is defined in Rule 405 of the Securities Act) connected with the Company in any capacity (each, a "Covered Person" and, together, "Covered Persons") is subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i)-(viii) of the Securities Act (a "Disqualification Event"), except for a Disqualification Event covered by Rule 506(d)(2) or (d)(3), the Company has exercised reasonable care to determine whether any Covered Person is subject to a Disqualification Event; and the Company shall provide prompt written notice to

3

December 22, 2025

Placement Agent of any Disqualification Event relating to any Covered Person, or any event that would, with the passage of time, become such a Disqualification Event, prior to both the execution and delivery of a purchase agreement with respect to Covered Securities and prior to any Closing thereof. The Company will also comply, to the extent applicable, with its disclosure obligations under Rule 506(e), and will furnish to Placement Agent a copy of any disclosures to be provided thereunder.

8.    **[Reserved]**

9.    **Company Responsibilities**:   In order to coordinate efforts to effect the Financings, during the period of Placement Agent's engagement hereunder, (x) the Company agrees to take such actions (including marketing assistance) as may be reasonably requested by Placement Agent to effect any Financing (including the registration or qualification of Company securities in mutually agreed jurisdictions), (y) neither the Company nor any of its representatives shall, directly or indirectly (except through Placement Agent and any co-placement agents or co-managers permitted to be appointed under this Agreement), disclose or distribute any Offering Document to any person or otherwise advertise to or solicit any offer from, or negotiate with, any party with respect to any Financing; and (z) to the extent the Company or any of its representatives are separately contacted by or on behalf of any party concerning the possibility of participating in a Financing, the Company shall promptly so inform Placement Agent in order that Placement Agent can evaluate such party and its interest and negotiate any such Financing directly with such party, under the Company's guidance. The Company shall also promptly inform Placement Agent in the event that the Company retains any legal counsel, consultant or other advisor or representative in connection with any Financing.

10.    **Exculpation**: The Company agrees that Placement Agent shall not have any liability (including without limitation, liability for any losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses or disbursements) in contract, tort or otherwise to the Company, or to any person claiming through the Company, in connection herewith and the matters contemplated hereby, except to the extent any such liability is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of Placement Agent. In no event shall Placement Agent be liable hereunder for any amounts in excess of the fees previously received by Placement Agent pursuant to this Agreement.

11.    **Indemnity/Hold harmless**:   The Company shall indemnify, defend, and hold Placement Agent and its officers, directors, agents, partners, members, controlling persons and employees harmless from and against all liabilities, losses, damages, penalties, actions, judgments, costs, expenses or disbursements of any kind or nature that may be imposed on, incurred by, or asserted against Placement Agent, in any way relating to or arising hereunder, whether or not in connection with pending or threatened litigation or arbitration, and whether or not Placement Agent is a party, except to the extent such liabilities, losses,

December 22, 2025

damages, penalties, actions, judgments, costs, expenses or disbursements are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have arisen primarily and directly from Placement Agent's gross negligence or willful misconduct.

12. **Prevailing Party**:   In the event that Placement Agent institutes legal proceedings to enforce any provisions of this Agreement, including the collection of any fees or reimbursable expenses (including legal expenses) due hereunder, and Placement Agent is the prevailing party in such proceedings, the Company shall reimburse Placement Agent for all costs and expenses, including reasonable and documented attorneys' fees, actually incurred in connection therewith.

13. **Independent Contractor**:   The Company agrees that Placement Agent is acting as an independent contractor, and any duties of Placement Agent arising hereunder shall be owed solely to the Company. Nothing in this Agreement or the nature of our engagement shall be deemed to create a fiduciary or agency relationship between Placement Agent and the Company or its security holders, employees or creditors, in connection with any Financing or otherwise.

14. **Confidentiality**:   All advice (written or oral) given by Placement Agent in connection herewith is intended solely for the benefit and use of the Company, and no such advice shall be used for any other purpose or be reproduced, disseminated, quoted from or referred to at any time, in any manner or for any purpose, nor shall any public references to Placement Agent be made by the Company without the prior written consent of Placement Agent. However, Subject to the Company's consent, Placement Agent may, at its option and expense, include the Company's name and logo and a description of Placement Agent's role in connection with the Financing in such newspapers, periodicals, annual reports and other public marketing materials as it may choose.

15. **Waiver of Jury Trial**:   EACH OF PLACEMENT AGENT AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY LAW, ON BEHALF OF ITS RESPECTIVE EQUITY HOLDERS AND CREDITORS) HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, ANY FINANCING OR THE USE OF PROCEEDS THEREOF).

16. **Jurisdiction**:  Placement Agent and the Company irrevocably and unconditionally submit to and accept the exclusive jurisdiction of the United States District Court for the Southern District of New York for any action, suit or proceeding arising out of or based upon this Agreement or any matter relating to it and waive any objection that they may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over them.

5

December 22, 2025

17.    **Counterparts, Governing Law & Misc.**:   This Agreement (i) may be executed in counterparts electronically and delivered via email in .pdf, which shall be accepted as original execution signatures, (ii) is governed by the laws of the State of New York, without giving effect to principles of conflicts of laws, (iii) embodies the entire agreement and understanding of the parties with respect to the subject matter hereof, (iv) supersedes all other prior discussions or agreements, oral or written, and all other communications between the parties relating to the subject matter hereof; (v) may not be modified, amended or supplemented except in writing executed by the Company and Placement Agent, (vi) may not be assigned by either party without the prior written consent of the other party, and (vii) shall inure to the benefit of, and be binding upon, the parties hereto and their respective permitted successors and assigns.

18.    **Notice**: All notices or other communications, including service of process, required or permitted to be given hereunder shall be in writing, unless otherwise specified, and if sent to Placement Agent, shall be delivered to 745 Fifth Avenue, 34th Floor & PH New York, NY 10151 and if to the Company, to Floor 3, Building 6, Wuxing Road, Lane 727, Pudong New Area, Shanghai, China, 201204. The parties hereto hereby consent to service of process by any means permitted under New York law (other than by publication), including by mail at their respective addresses first set forth above.

[Signature Page Follows]

6

December 22, 2025

Please confirm your agreement by signing in the space provided below and returning to us a duplicate of this Agreement.

Very truly yours,

**E.F. Hutton & Co.**

By: _Duncan B. Swanston_
Name:      Duncan B. Swanston
Title:      Supervisory Principal

ACCEPTED AND AGREED TO:

**Zhibao Technology Inc.**

By: _Botao Ma_
Name:      Botao Ma
Title:      Chief Executive Officer

7